By the Court.

This is the case of an endorser of two promissory notes, suing the preceding endorsers, to obtain the reimbursement of the amount of those notes, which he has been compelled to pay . . , , , - to the holder.
The defendants, now the appellees, resist the claim, on the ground, that no demand of payment ° was made oí the maker ol the notes, '
The point of law arising on this, viz. that where no demand of payment has been made of the maker of a note, the endorsers are not liable, is not' disputed by the appellant; but he contends that a. sufficient demand has been made ; and he further asserts that, altho’ no such demand should have taken place, yet, inasmuch as he has exercised against the appellees the action of guarantee, while the suit against him, by the holder, was pending, be has thereby preserved his right against them.
As to the kind of action of guarantee, to which the appellant has thought fit to resort, viz. that of calling his prior endorsers to defend the suit brought against him by the holder of the -notes, and the effect of which, he contends, must be to . make those endorsers liable at all events, whether a demand-of payment has been made or not, it appears to this court a mode unknown to our laws, . Nor is it to be found in any of the laws which *262 • they have been able to consult : not even in the French Code de Commerce. What is called there the action of guarantee, in matters of bills of exchange and promissory notes, is nothing but what is expressed in our own laws, viz, the right which an endorser has to be reimbursed by his prior endorsers. “The holder of a bill of exchange “ protested for non payment,” says the French Code, “may exercise his action of guarantee See. “ The same faculty belongs to any of the “ endorsers with regard to the drawer, and any “ of the endorsers that are before him.” Is this faculty, that of calling the prior endorsers to defend the suit', which may be brought, against the party* entitled to the action of guarantee '? No: for the holder, who is sued by no body, has the same action. It is, therefore, nothing more than the right of calling upon the preceding endorsers to be paid and indemnified. It is a consequence of the principle that every party, by transfering a < bill of exchange or note, by indorsement, is considered as warranting that it shall be paid, and ; binding himself to pay it, in case it should be dishonored. The ordinance of Bilbao, in different words, establishes the same principle, chap. 13, art. 22. “When any of the endorsers has paid the “amount of a bill of exchange, he has his “ recourse against the prior endorsers ; and may “ exercise it against all, or any of them in sohdum, “ ScP.” Thus far ^>ur laws go; and thus do they *263 agree on this subject, with the general law commerce, as understood in other countries. But, to suppose that when an endorser is sued by the holder of a note, he is not bound to defend iiim seif, but has a right to call his prior endorsers to defend him : and that, should he be afterwards condemned for want of a defence, the prior endorsers will be liable, even tho’ they should be able Ao prove their previous discharge, in consequence of a neglect to demand payment of the maker of the note, is a doctrine, which to this court appears to be as repugnant to the laws of reason, as it is to the positive laws of commercial countries, and which would produce in practice an endless source of litigation and confusion.
Bet it be further observed that, in this particular case, even this kind of recourse has not been regularly exercised., The appellant has called his warrantors, when it was too late for them to undertake his defence. Judgment was rendered against him, at the suit of the holder of the notes, five days before the time allowed to the appellees to answer: and it is in vain to say that the delay, within which a, new trial may be demanded was not elapsed. For new trials are granted only in cases provided by law, and are not to be relied on as a matter of course.
Ir, therefore, the appellant had no other ground to go upon than this kind of warranty, we are e£ opinion that his action cannot be maintained-.
*264 But there is another question, in this case, 1 , , ' and a truly important one; has any demand oí payment been made of the maker of these notes, and if no demand has been actually made of him personally, has any thing been done, which may be considered tantamount to a demand ?
Upon this point, thefactsareas follows : Charles Massicot had his domicil on a plantation, of which he was part owner, distant ten leagues from New-Orleans. About four months before the notes became due, that place was sold by the sheriff and he was turned out. He then went with his wife and children to his father in law’s, a few miles up the coast and staid there. : While there, he used to come to town, to the house of Plauché, his brother in law, to attend to his business. The time, which he spent in that house, on different occasions, was in all about two months. He also came, now and then, to the house of Eleonor Wiltz in the city, and stayed there about a day or two, attending to his business in the city. When the, notes became due, the Notary Public went to demand payment first at Plauché’s, then at Wiltz’s, and, in both places, received for answer that Charles Massicot was at the plantation.
The general principle of law is that a demand of payment must be made of the maker of a promissory note, in order to make the endorsers liable. But, there are circumstances ih which that is not practicable : as when the maker has *265 removed from the place when the note was payable or where hé has abscoled. In such casts, it is sufficient for the holder to justify that he has used, due diligence to get payment from the maker of the note. In the English writers* who, ⅛ com* mercial cases; are more full than any^btfaer, that .principle is consecrated. In one case among others, Collins vs. Butler, Strange 1087, the holder of a note thought that he had shewn enough b$<' proving that the maker had shut up his store*before the note became due : but, the court was of opinion that he ought to have given in evidence that he enquired after the maker, or attempted to find him out.
Let us see whether this⅛ case may by classed among those, in which due diligence has been shewn, on the part of the -holder» Charles Massi* cot had once a fixed place of residence he was turned but' óf ⅛ four rndhths before^h©'notes. be* ' came du^. Where was his ^residence, during those fqu£,months t he had his wife and-children at , his father in- law’s in the country ; but ⅛ spent-twb of those-four months at his brother -in law’s in the city to attend to his business. . To those who had„any de^mgs with him* this must hay§ been the Spot, which they oohgidéred as his plapfi . qf resáfenc®. It is highly prqbable - t^at few -ofc them, ifarnyv-ever enquired whether hehadánothew; fpth wopo'i^ipOmiy } in ftois&w^s he at home?
*266 It appears to this court that, after Charles-Massicót had been turned out of his domicil, he had no absolute residence any where* and that for the purpose of attending to Ms business^ Plauché’s house was niore the place of his residence, than any others—that, under such» circumstances, the; holder has shewn due, diligence, in endeavours to find him out, and has done that which, accord-ing to law, is sufficient to make the endorsers liable.
With respect to" the' particular situátiÓn of Augustin 'Massicot, one of the endorsers, who lives at the distance of seven leagues from New-Orleans and alleges that he has received no notice of the; protest, it appears to this' court that the only . practicable means of giving him notice have been: used by the appellant.,
When the parties to a bill of exchange, or pro- missory note, live áta distance from the place^t Where it was payable, the general rule is that notice of the protest is sent to them by the next post. It is true, that in this country theré exists a particular inconvenienoe, which is that the post does not pass every where. But, there is always for every inhabitant a place where he sends for his letters. The post-office at New-Orleans, for those who live no furfher from the city than Augustin Massicot, is certainly the proper place of deposit for letters addressed to them. Sbould *267 the letters, thro’ mistake, be* sent out to some 7 7 # other office, more remote from the party entitled to notice, than the place where such notice is * . deposited, the fault can no more be attributed to the person giving the notice, than the mislaying or loss of it would be. All he has to do is to put it in the post-office. He is not to be answerable for what happens afterwards.
The court is of opinion that in this country, as well as every where else, notice deposited in the post-office, for those who live at a distance, is all that can be required, and that any other manner of giving notice, if such could be devised, would not only be deviating from the established custom, but would create more difficulty and inconvenience, than can possibly arise from the observance of the general rule-
Iris adjudged and decreed that the judgment pf the district court be reversed, and that judgment be entered for the appellant for the amount of the notes, with interest from the date of the judicial demand and costs.